# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

CALVIN MCMILLAN,
        **Plaintiff,**

    **v.**                     **Case No. 26-CV-594**

NATIONAL FOOTBALL LEAGUE and
WISCONSIN DEPARTMENT OF REVENUE,
        **Defendants.**

---

## DECISION AND ORDER

---

Currently pending before the court is Calvin McMillan's Request to Proceed in District Court without Prepaying the Filing Fee.

Having reviewed McMillan's request, the court concludes that he lacks the financial resources to prepay the fees and costs associated with this action. Therefore, his Request to Proceed in District Court without Prepaying the Filing Fee will be granted.

However, because the court is granting the plaintiff's Request to Proceed in District Court without Prepaying the Filing Fee, it must determine whether the complaint is legally sufficient to proceed. 28 U.S.C. § 1915.

Congress sought to ensure that no citizen would be denied the opportunity to commence a civil action in any court of the United States solely due to poverty. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)). However, Congress also recognized that "a litigant

whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To balance these competing concerns, before the court can allow a plaintiff to proceed in forma pauperis it must determine that the case neither (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, nor (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Thus, although "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), a pro se complaint must meet these minimal standards before the court shall grant a plaintiff leave to proceed in forma pauperis.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton*, 504 U.S. at 31; *Neitzke*, 490 U.S. at 325. Although factual allegations must be weighed in favor of the plaintiff, that does not mean that the court is required to accept without question the truth of the plaintiff's allegations. *Denton*, 504 U.S. at 32. Thus, a court may dismiss a claim as frivolous if it is "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," "wholly incredible," or "based on an indisputably meritless legal theory." *Id.* at 32-33. A court may not dismiss a claim as frivolous simply because "the plaintiff's allegations are unlikely." *Id.*

A claim might not be frivolous or malicious but nonetheless fail to state a claim upon which relief may be granted and, therefore, be subject to dismissal. In

determining whether a plaintiff has stated a claim, under 28 U.S.C. § 1915(e)(2)(B)(ii) the court applies the same well-established standards applicable to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *DeWalt v. Carter*, 224 F.3d 607, 611 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although the allegations in a complaint need not be detailed, a complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks, citation, and brackets omitted). The complaint must be sufficiently detailed "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (quotation marks and ellipses omitted).

If the complaint contains well-pleaded non-frivolous factual allegations, the court should assume the veracity of those allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief will … be a

3

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

With the standards set forth in 28 U.S.C. § 1915(e)(2) in mind, the court turns to the allegations raised in McMillan's complaint, which the court accepts as true at this stage.

McMillan alleges that he wrote two songs about the Green Bay Packers entitled "Pack Attack" (or sometimes he refers to it as "The Pack is Back, It's a Pack Attack" (ECF No. 1-2 at 33)) and "Go Pack Go" (which he sometimes refers to as "The Funky Packers" (ECF No. 1-2 at 6, 9)). (ECF No. 1, ¶¶ 43, 47, 80.) The lyrics of Pack Attack included the phrase "the pack is back."

"Pack attack" and "go pack go" were used in conjunction with lottery tickets issued by the Wisconsin Department of Revenue and featuring the Green Bay Packers' logo. (ECF No. 1-2 at 9.) "Pack is back" has been used on t-shirts (ECF No. 1-2 at 10) and in conjunction with packs of trading cards (ECF No. 1-2 at 13), but McMillan does not allege that those products were produced by either defendant. McMillan argues that the National Football League (NFL) unlawfully monopolizes the use of "professional football content" and the Wisconsin Department of Revenue likewise unlawfully monopolizes the sale of lottery tickets. As a result, he was prevented from offering his own lottery tickets using the Green Bay Packers logo.

McMillan has failed to state a plausible antitrust claim. At this stage, the court accepts as true McMillan's allegation that it is the NFL rather than an individual team (*e.g.*, the Packers) that controls the relevant licensing. And while consolidated

4

licensing agreements can have antitrust implications, *see Am. Needle, Inc. v. NFL,* 560 U.S. 183 (2010), McMillan has failed to plausibly allege that such a scheme is at play here. Rather, McMillan's claim appears focused on his allegation that the NFL licensed the use of the Green Bay Packers' name and logo exclusively to the Wisconsin Department of Revenue for use in a lottery game. Thus, this arrangement had the effect of precluding McMillan from offering his own lottery tickets using the Green Bay Packers' name and logo (a logo that he believes the NFL unlawfully restricts).

McMillan's allegations raise significant questions of standing and specifically whether his notion of a Packers lottery was more than a mere idea such that he has plausibly alleged a concrete injury. But setting that hurdle aside, his allegations do not present a matter of antitrust law but rather intellectual property and specifically trademark law.

Trademark holders are explicitly entitled to restrict the use of their marks. *See, e.g.*, 15 U.S.C. §§ 1114; 1125. This is a bedrock principle of trademark law. *See B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 142 (2015). A trademark holder can largely license (or not license) its mark as it wishes. *See* 15 U.S.C. §§ 1055; 1127. Licensing to one entity and not another is not anti-competitive but rather an integral part of protecting and capitalizing the value of a mark. In fact, restricting licensing is integral to maintaining the mark. *See Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 639 F.3d 788, 789 (7th Cir. 2011); 2 McCarthy on Trademarks and Unfair Competition § 18:48 (5th ed.). That the NFL has exclusively licensed the use of the Green Bay Packer name and logo to the Wisconsin Department of Revenue for use in

conjunction with a lottery game does not, as a matter of law, plausibly violate 15 U.S.C. § 2.

McMillan's claim against the Wisconsin Department of Revenue falls more neatly into the framework of an antitrust claim in that it involves a monopolist explicitly prohibiting the entry of competitors into a market. No one other that the State of Wisconsin may operate a lottery in Wisconsin. However, states are immune from such antitrust claims. *Parker v. Brown*, 317 U.S. 341, 352, (1943). Thus, a state refusing to allow competitors to its state-run lottery does not violate the Sherman Antitrust Act.

That leaves what McMillan characterizes as a copyright claim over his song lyrics. His claim focuses specifically on the use of the phrases "pack attack," "pack is back," and "go pack go." As the court understands his claim, because these phrases were the titles or lyrics of his songs, any use of these phrases violates his copyright of his songs.

As a preliminary matter, before a party may sue to enforce a copyright, the work must be registered with the Copyright Office. 17 U.S.C. § 411(a). McMillan alleges that these works "are registered or intended to be registered with the United States Copyright Office." (ECF No. 1, ¶ 45.) He later alleges that, although he submitted a copyright application, he subsequently could find no record of it. (ECF No. 1-1 at 2.) Instead, he provides proof of a separate musical group, the Sax Pack, having registered a different sound recording titled "Pack is back."[1] (ECF No. 1-2 at

---

[1] A Google search reveals that a smooth jazz trio of saxophonists calling themselves the Sax Pack released an album with the title song "The Pack is Back" in 2009. *See*

28.) The scope of a copyright is particularly important with respect to a song because, depending on the circumstances, the music, lyrics, and the performance of a song could constitute three separate works, and the registration of one does not necessarily protect another.

But again looking past that apparent defect, McMillan has failed to state a plausible copyright claim because "pack is back," "go pack go," or "pack attack" are not copyrightable. No one can copyright short phrases such as names, titles or slogans. *See* 37 C.F.R. § 202.1(a); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 285-86 (3d Cir. 2004). Nor can titles of songs be copyrighted. *Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 872 (7th Cir. 2013). Thus, McMillan's use of these phrases in the title or lyrics of a song does not provide him with a copyright over all subsequent uses of these phrases. Consequently, McMillan has failed to plead a plausible violation of federal copyright law.

**IT IS THEREFORE ORDERED** that the plaintiff's Request to Proceed in District Court without Prepaying the Filing Fee (ECF No. 2) is **granted**.

**IT IS FURTHER ORDERED** that the plaintiff's complaint and this action are **dismissed** with prejudice. The Clerk shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 17th day of April, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge

---

https://en.wikipedia.org/wiki/The_Sax_Pack. It has no apparent relationship with the Green Bay Packers.

7